IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JULES VAN SANT**, as Trustee of Oregon Printing Industry Pension Trust,<br><br>        Plaintiff,<br><br>        v.<br><br>**NU-WAY PRINTING & ENVELOPE CO**., an Oregon corporation, and **MOREL, INC**., an Oregon corporation, dba **MOREL INK**,<br><br>        Defendants. | Case No. 3:19-cv-2058<br><br>**OPINION AND ORDER** |

Jeffrey P. Chicoine and Iván Resendiz Gutierrez, MILLER NASH GRAHAM & DUNN LLP, 3400 U.S. Bancorp Tower, 111 SW Fifth Avenue, Portland, Oregon 97204. Of Attorneys for Plaintiff.

Karen L. O'Connor, STOEL RIVES LLP, 760 SW Ninth Avenue, Suite 3000, Portland, OR 97205. Of Attorneys for Defendant Nu-Way Printing & Envelope Co.

Kathleen Carroll Bricken, FOSTER GARVEY PC, 121 SW Morrison Street, 11th Floor, Portland, OR 97204. Of Attorneys for Defendant Morel, Inc.

**Michael H. Simon, District Judge.**

        Plaintiff Jules Van Sant, in her capacity as Trustee of the Oregon Printing Industry Pension Trust (the "Pension Trust"), filed this lawsuit under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments

Act of 1980 ("MPPAA"), 29 U.S.C. § 1001, *et seq*. Plaintiff seeks to collect claimed accelerated withdrawal liability, interest, statutory damages, liquidated damages, and attorney's fees and costs that Plaintiff alleges is owed by Defendant Nu-Way Printing & Envelope Co. ("Nu-Way") and the company that purchased the majority of Nu-Way's assets, Defendant Morel, Inc. ("Morel"). Plaintiff alleges that Morel is Nu-Way's successor-in-interest for purposes of ERISA liability.

This Opinion and Order addresses Nu-Way's motion to compel arbitration and to dismiss or, in the alternative, to stay Plaintiff's claims against Nu-Way. The principal question raised in Nu-Way's motion is whether the agreement governing the Pension Trust, the Amended and Restated Agreement of the Oregon Printing Industry Pension Trust effective July 1, 2014 (the "Pension Agreement"), was properly amended after mass withdrawal (the "First Amendment") to allow for accelerated withdrawal liability for events of default, particularly "insecurity" events. Nu-Way also challenges whether the First Amendment properly was applied to Nu-Way when the First Amendment was retroactively made effective to a date before Nu-Way sold its assets to Morel. Nu-Way further disputes the Pension Trust's conclusion that Nu-Way's asset sale to Morel resulted in a substantial likelihood that Nu-Way would be unable to pay its withdrawal liability thus creating an insecurity event of default, which resulted in the Pension's Trust's imposition of accelerated withdrawal liability. Nu-Way argues that under ERISA these issues must be decided, in the first instance, by an arbitrator. For the reasons discussed below, Nu-Way's motion to compel arbitration on the underlying disputes relating to Nu-Way's

withdrawal liability is granted in part, and the Court stays any further hearing of these issues against Nu-Way pending arbitration.[1]

## BACKGROUND

The Pension Trust is a multiemployer plan under ERISA. It is an employer pension benefit plan. Nu-Way was an employer bound by a collective bargaining agreement that obligated Nu-Way to make contributions to the Pension Trust on behalf of Nu-Way's employees. On or about May 12, 2011, the Pension Trust provided notice to Nu-Way that Nu-Way had a complete withdrawal, effective October 26, 2010, from the Pension Trust, pursuant to 29 U.S.C. § 1383(a)(1). The Pension Trust also provided notice to Nu-Way that during the plan year ending June 30, 2011 there was a mass withdrawal, pursuant to § 1341a(2), due to the withdrawal of all employers from the Pension Trust.

The Pension Trust assessed a withdrawal liability against Nu-Way and set a quarterly payment schedule. Nu-Way began making its quarterly payments in September 2011. On or about December 22, 2011, the Pension Trust gave notice to Nu-Way of the Pension Trust's redetermination of Nu-Way's withdrawal liability and requested continued quarterly payments. On January 27, 2012, the Pension Trust gave notice to Nu-Way of the Pension Trust's determination of Nu-Way's reallocation liability and requested quarterly payments of $3,124.91. Nu-Way has made these quarterly payments on time as scheduled.

---

[1] The parties also dispute Plaintiff's claim that Nu-Way must pay Plaintiff the sums demanded while the underlying disputes are arbitrated, pursuant to the ERISA principle of "pay now, dispute later." In this Opinion and Order, the Court does not reach that specific issue. Additionally, in the moving papers and at oral argument Morel appears to have consented to the arbitrator hearing Plaintiff's successor liability claim against Morel. At oral argument, however, Plaintiff was unable to state her position on whether she would agree to have Plaintiff's successor liability claim referred to arbitration if the Court were to compel arbitration of Plaintiff's underlying disputes against Nu-Way. Accordingly, the Court does not address that issue in this Opinion and Order. These matters will be the subject of future proceedings.

On December 5, 2018, Nu-Way, its three shareholders, and Morel entered into an asset purchase agreement and other related agreements. Under these agreements, Nu-Way agreed to sell to Morel many of Nu-Way's assets, including its goodwill, customer lists and records, sales records, business telephone numbers, domain name, website, work-in-process, and customer-owned inventory. Nu-Way's asset sale to Morel was completed on December 15, 2018. On December 27, 2018, Nu-Way notified the Pension Trust that Nu-Way would close its business on or around December 31, 2018. Nu-Way also notified the Pension Trust that it had ceased operations as of December 14, 2018 and would vacate its place of business by January 15, 2019.

On March 29, 2019, the Trustee of the Pension Trust amended the Pension Agreement by adopting the First Amendment. Specifically, the First Amendment adds events of default that previously were not included in the Pension Agreement. The First Amendment added Section 26.1, which provides:

> In the event of a default, the Trustees may require immediate payment of all or a portion of the outstanding withdrawal liability amount, plus accrued interest from the due date of the defaulted payment. For purposes of this Article XXI, a default occurs when the Participating Employer fails to make, when due, any payment under ERISA Section 4219, if the failure is not cured within 60 days after receiving written notification from the Trustees of such failure. A default also occurs upon the occurrence of any event that indicates a substantial likelihood that the Participating Employer will be unable to pay its withdrawal liability such as (A) becoming a debtor under any applicable federal or state bankruptcy, reorganization, or insolvency laws or a custodian (as defined in the U.S. Bankruptcy Code), receiver, receiver-manager, trustee, or monitor is appointed for, or takes charge of, all or a substantial part of such Participating Employer's assets; (B) ceasing to operate its business, winding up, liquidating, or dissolving itself; (C) conveying, selling, assigning, transferring, leasing, or otherwise disposing of (whether in one transaction or in a series of transactions) all or a substantial part of the value of its assets to any other person or entity; or (D) a significant loss or decline in the Participating Employer's business.

ECF 18-3 at 4. The First Amendment was given a retroactive effective date of July 1, 2018.

As noted, the First Amendment was passed on March 29, 2019. On April 15, 2019, the Pension Trust notified Nu-Way that it was in default under the terms of Section 26.1, as newly added in the First Amendment. ECF 1-2. The Pension Trust demanded, pursuant to 29 U.S.C. § 1399(c)(5), that Nu-Way pay an accelerated withdrawal liability of $1,102,315.78 no later than April 30, 2019, plus interest as provided and calculated under 29 C.F.R. § 4219.32 from April 15, 2019 until the amount had been paid in full.

On July 2, 2019, counsel for Nu-Way responded to the Pension Trust's demand for accelerated withdrawal liability. ECF 18-4. Nu-Way requested, pursuant to 29 U.S.C. § 1399(b)(2)(A), that the Pension Trust review its withdrawal liability assessment. Nu-Way asserted that it was not in default and that the amount assessed and the new payment schedule demanded was incorrect and unenforceable. Nu-Way further asserted, among other things, that it was entitled to a statement of reasons and basis for the Pension Trust's decision. Nu-Way cited 29 C.F.R. § 4219.33 and argued that any rules adopted by pension plans must be reasonable and must operate and be applied uniformly to all employers in the plan and that the First Amendment did not comply with this requirement and thus was unenforceable. Nu-Way also stated that there was no substantial likelihood that it would be unable to continue to pay its quarterly payments of $3,124.91 in perpetuity because it would receive $400,000 from Morel and could conservatively invest that amount and earn sufficient returns to make the required payments. Nu-Way concluded that it is "prepared to defend itself in arbitration under ERISA Section 4221 [29 U.S.C. § 1401] (and litigation) if necessary." ECF 18-4.

On July 24, 2019, counsel for the Pension Trust replied to Nu-Way's letter of July 2nd. ECF 18-5. The Pension Trust stated that the review demanded by Nu-Way is only applicable to determinations made under 29 U.S.C. § 1399(b)(1), a determination made after an employer's

PAGE 5 – OPINION AND ORDER

complete or partial withdrawal or after a mass withdrawal. The Pension Trust noted that because its accelerated withdrawal demand was not made under § 1399(b)(1), the review described in § 1399(b)(2)(A) does not apply. The Pension Trust also stated that Nu-Way's "readiness" for arbitration under 29 U.S.C. § 1401(a) is not relevant because that provision is only triggered by the Pension Trust's notices under § 1399(b)(1), which were given in 2011 and January 2012, and thus any request by Nu-Way for arbitration is untimely. The Pension Trust's position, simply stated, is that the mandatory arbitration provision in § 1401(a) does not apply to the April 15, 2019 notice of accelerated withdrawal liability. ECF 18-5.

On August 22, 2019, counsel for Nu-Way responded to the Pension Trust. ECF 18-6. Nu-Way argued that the arbitration provision in 29 U.S.C. § 1401 applies to the April 15, 2019 notice of accelerated withdrawal liability. Nu-Way asserted the Pension Trust's default decision under § 1399(c)(5) was a "determination" under § 1399 and thus falls within the parameters of what must be arbitrated under § 1401(a) when there is a dispute. Nu-Way explained that it was initiating arbitration or intended to initiate arbitration, depending on whether the Pension Trust's letter dated July 24, 2019 was a decision or a notification. Nu-Way added that it disputes and submits for arbitration all the issues raised in its July 2, 2019 letter. ECF 18-6. On December 20, 2019, Nu-Way sent another letter to the Pension Trust in which Nu-Way gave notice that it was initiating arbitration on all issues raised in its July 2, 2019 letter. ECF 18-7.

The Pension Trust filed this lawsuit on December 18, 2019 but did not serve Nu-Way or Morel until after Nu-Way sent its letter of December 20th. The Pension Trust asserts one claim against Nu-Way, seeking to collect the accelerated withdrawal liability along with interest, statutory damages, liquidated damages, and attorney's fees and costs, and one claim against Morel, alleging successor liability. ECF 1.

## DISCUSSION

The primary issue before the Court is whether ERISA's mandate that disputes about determinations relating to withdrawal liability must be decided in arbitration applies to the facts in this case, specifically the Pension Trust's decision under 29 U.S.C. § 1399(c)(5) to accelerate Nu-Way's withdrawal liability. ERISA's relevant arbitration provision provides:

> (1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of—
>
>> (A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or
>>
>> (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title.
>
> The parties may jointly initiate arbitration within the 180-day period after the date of the plan sponsor's demand under section 1399(b)(1) of this title.

29 U.S.C. § 1401(a).

Plaintiff argues that although the first sentence of § 1401(a) is broad, the statute's following sentences narrow the application of the mandatory arbitration provision only to determinations that had a notification made pursuant to § 1399(b). First, Plaintiff asserts that because acceleration of withdrawal liability does not have a notice made pursuant to § 1399(b), but instead has a notification made pursuant to § 1399(c)(5), the mandatory arbitration provision does not apply here. Second, Plaintiff argues that a declaration of default under § 1399(c)(5) is not a "determination," as that term is used in ERISA, and thus does not fall within even the broadly phrased first sentence of § 1401(a). Third, Plaintiff contends that even if § 1401(a) applies to accelerated withdrawal decisions, it does not apply to the disputes in this case because they are pure legal questions and thus fall within an exception to mandatory arbitration.

PAGE 7 – OPINION AND ORDER

**A. Whether the Initiation Deadline Clauses Limit Arbitrability**

The text of the first sentence of § 1401(a) is plain and broad. It establishes that *any* dispute concerning determinations made under *§§ 1381 through 1399* shall be resolved through arbitration. If Congress had intended that only disputes with notices issued under § 1399(b) must be resolved by arbitration, it would have been simple to draft the first sentence to make that clear. Instead, Congress enacted a broad first sentence that includes more disputes to be resolved in arbitration than only disputes with notices sent under § 1399(b).

The next sentences of § 1401(a) provide options for deadlines for initiating "the arbitration proceeding." These time constraints are triggered by different notices sent under various subsections of § 1399(b). In the case of accelerated withdrawal liability, however, there is no notice sent under any subsection of § 1399(b). The demand for payment is sent pursuant to § 1399(c)(5). Assuming for the moment that such demands are "determinations" (an issue discussed below), they are made under § 1399 and thus fall within the first sentence of § 1401(a), and all related disputes are subject to arbitration. The deadlines stated in § 1401(a), however, do not apply because no notice under § 1399(b) is sent for accelerated withdrawal liability.

Plaintiff argues that if the deadlines do not apply, then a dispute, which otherwise falls within § 1401(a), is not arbitrable. The Court does not read the portion of § 1401(a) setting deadlines in such a manner. The text setting deadlines does not *require* the deadlines as a basis for arbitrability. It is the first sentence of § 1401(a) that sets the requirements for arbitrability. The remaining sentences merely set certain deadlines that apply in certain circumstances.

The text of § 1401(a) does not provide any indication that the broad description in § 1401(a) of the types of cases that are subject to arbitration was narrowed by the inclusion of certain deadlines for initiating arbitration. The fact that arbitration deadlines are established that refer to notices under § 1399(b) does not mandate that only determinations that involve such

notices are subject to mandatory arbitration. To interpret the statute otherwise renders the first sentence of § 1401(a) meaningless and makes only the latter sentences define what types of disputes are subject to arbitration. This is improper statutory construction. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

This difference also makes practical sense. The majority of "determinations under sections 1381 through 1399" will be determinations relating to general withdrawal liability that have notices sent under § 1399(b). They involve long term payment liability, payable quarterly or in other installments. *See* § 1399(c)(3). The inclusion of a deadline for initiating arbitration of such disputes is important to ensure that arbitration is promptly commenced. Accelerated withdrawal liability, on the other hand, is permitted under the statute only in the event of default. It allows for immediate demand of all the outstanding liability, plus interest. It creates an immediate, and larger, liability. An employer, therefore, is much less likely to delay raising a dispute concerning accelerated withdrawal liability and not initiate arbitration within a reasonable time. Thus, establishing a statutory deadline is less important in this type of case.

**B. Whether Accelerated Withdrawal Decisions are "Determinations"**

The text of the statute also does not support Plaintiff's argument that the word "determination," as it is used in the context of withdrawal liability, does not also include issues relating to accelerated withdrawal liability. The term is not defined in either ERISA or the MPPAA.

Webster's Third New International Dictionary defines "determination" as, among other things, (a) "the settling and ending of a controversy, esp. by judicial decision: conclusion,

decision"; (b) "the resolving of a question by argument or reasoning"; and (c) "the act of deciding definitively and firmly, esp. regarding a course of action; *also* the result of such an act of decision: fixed resolution: purpose." WEBSTER'S THIRD NEW INT'L DICTIONARY 616 (unabridged ed. 2002). Nu-Way challenges several aspects of the Pension Trust's decision relating to accelerated withdrawal liability, including its finding that an event had occurred that indicated a substantial likelihood that the Nu-Way would be unable to pay its withdrawal liability, thereby triggering default under Section 26.1 of the First Amendment. Nu-Way argues that this was a "determination" under § 1399(c)(5).

The Pension Trust's decision that Nu-Way was in default meets the plain and ordinary meaning of "determination." The Pension Trust made a definitive and firm decision regarding a course of action. The Pension Trust's decision settled and ended the issue of Nu-Way's withdrawal liability. This decision resolved the issue and involved reasoning. It thus falls within several of the definitions of "determination."

Other courts also have found that decisions relating to accelerated withdrawal fall within § 1401(a)'s broad mandate of arbitrability. This issue was discussed by the Eastern District of New York:

> As noted, the instant motion involves the propriety of Plaintiffs' determination that Defendant is in default within the meaning of 29 U.S.C. § 1399(c)(5), and, if so, whether Plaintiffs can require an accelerated payment of the entire withdrawal liability balance, notwithstanding the pendency of the arbitration proceedings between the parties. It is self-evident that the default provisions in question, which bear upon the merits of the parties' underlying dispute, implicate matters encompassing Defendant's withdrawal liability. Indeed, § 1399(c)(5) (which sets forth the definition of a statutory "default" and permits "immediate payment" of outstanding withdrawal liability in such case) falls squarely within the withdrawal liability provisions. Therefore, it follows that any factual disputes implicating this statutory provision must be submitted to and adjudicated by the arbitrator in the first instance

PAGE 10 – OPINION AND ORDER

> (assuming that arbitration has been timely initiated). *See Nat'l Pension Plan of Unite Here Works Pension Fund v. Westchester Lace & Textiles, Inc.*, No. 05 CIV. 6138, 2006 WL 2051107, at *10 (S.D.N.Y. July 21, 2006) (recognizing that although "Defendants seek a determination from this Court that the Fund Manager's determination to require immediate payment pursuant to ERISA § 4219(c)(5) [29 U.S.C. § 1399(c)(5)] was unreasonable, ERISA provides that disputes over withdrawal liability be resolved through arbitration."); *O'Neill Bros. Transfer and Storage Co.*, 620 F.3d at 771-72 (recognizing the requirement that disputes concerning withdrawal liability "shall be resolved through arbitration," and noting that "the propriety of the plan's default determination is beyond the scope of [the court's] review at this juncture" where defendant failed to timely invoke arbitration as to this issue in the first instance).
>
> The dispute in the instant case implicates a provision encompassed within 29 U.S.C. §§ 1381-1399 and involves questions of fact underlying (1) the Fund's determination that Defendant is in default and (2) the acceleration of payments pursuant to the Fund's finding of a default. . . . The Court cannot and will not adjudicate the underlying merits of the parties' factual dispute concerning withdrawal liability where the statute clearly precludes the same and where a parallel arbitration proceeding is considering such issues.

*Gesualdi v. Scara-Mix, Inc.*, 2017 WL 9485710, at *11 (E.D.N.Y. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 945090 (E.D.N.Y. Mar. 10, 2017) (alterations in original); *accord Cent. States Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 620 F.3d 766, 771-72 (7th Cir. 2010) ("The MPPAA provides that '[a]ny dispute between an employer and the plan sponsor . . . concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration.' 29 U.S.C. § 1401(a)(1). O'Neill therefore concedes that the propriety of the plan's default determination is beyond the scope of our review at this juncture." (alterations in original)); *Nat'l Pension Plan of Unite Here Works Pension Fund v. Westchester Lace & Textiles, Inc.*, 2006 WL 2051107, at *10-11 (S.D.N.Y. July 21, 2006) (noting that "[t]hough Defendants seek a determination from this Court that the Fund Manager's determination to require immediate payment pursuant to ERISA § 4219(c)(5) was

unreasonable, ERISA provides that disputes over withdrawal liability be resolved through arbitration. Section 4221(a)(1) of ERISA, [29 U.S.C. § 1401(a)(1) ], requires that '[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [29 U.S.C. §§ 1381-1399] shall be resolved through arbitration,'" but finding that the request for arbitration was waived (alterations in original)).

Finding that accelerated withdrawal and immediate demand for payment is a "determination" also comports with the remainder of the arbitration provision and the rest of the withdrawal liability provisions in the MPPAA. Plaintiff's argument that Congress intended for employers and funds to arbitrate disputes over withdrawal liability and lengthy payment schedules, but not to arbitrate disputes over sudden, accelerated, immediate, lump sum liability is a strained reading of the MPPAA. A better reading of the statute is that Congress intended all disputes over withdrawal liability to be arbitrated, both the initial calculation and any later accelerated liability that might arise.

There is no dispute that Nu-Way timely initiated arbitration with respect to Plaintiff's default determination and demand for accelerated withdrawal liability. Plaintiff instead argues that decisions relating to accelerated withdrawal liability under § 1399(c)(5) do not fall within the arbitration mandate of § 1401(a). As discussed above, the Court rejects that construction.

## C. Whether an Exception to Arbitrability Applies

Plaintiff further argues that even if § 1401(a) applies to accelerated withdrawal decisions, the disputes at issue in this case do not fall within the arbitration provision and are an exception to the general rule of mandatory arbitration. Plaintiff asserts that the disputes do not involve factual issues relating to withdrawal liability. *See T.I.M.E.-DC, Inc. v. Mgmt.-Labor Welfare & Pension Funds, of Local 1730 Int'l Longshoremen's Ass'n*, 756 F.2d 939, 945 (2d Cir. 1985) (noting that exceptions to § 1401(a)'s requirement of arbitration include "when the nonjudicial

remedy is inadequate, statutory interpretation is required or there is a constitutional question"); *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 6 (E.D.N.Y. 2001) ("[Section 1401(a)] does not completely bar federal jurisdiction, however, because under certain circumstances the parties are not required to submit their dispute to the arbitrator first. Specifically, if the dispute is not solely over factual issues, but instead involves a constitutional question or, in some cases, a matter of statutory interpretation, it need not necessarily be resolved by an arbitrator." (citation omitted)).

Plaintiff describes the "exception" to arbitration more broadly than do the cases cited. Plaintiff argues that arbitration should only be allowed narrowly, despite the broad arbitration mandate of § 1401(a). Regardless of the proper characterization, Plaintiff focuses on Nu-Way's challenges to the Pension Trust's amendment to the Pension Agreement and asserts that these challenges are purely legal in nature. Nu-Way, however, also disputes the Pension Trust's decision that Nu-Way was in default. This determination is, at best for Plaintiff's argument, a mixed question of law and fact. Because there is "a factual dispute related to the imposition of withdrawal liability, that dispute must be arbitrated." *Rao*, 149 F. Supp. 2d at 6.

Further, Plaintiff also has not shown that the disputes regarding the amendment to the Pension Agreement involve a constitutional question or the type of statutory interpretation that makes them better suited only to federal adjudication instead of arbitration in the first instance, even if there were no dispute concerning the underlying finding of default. These disputes are not mere issues of statutory construction. Plaintiff asserts without support that the expertise of an arbitrator will not be helpful. Moreover, the parties agree that they both will have the option of appealing the arbitrator's decision to federal court, and conclusions of law by an arbitrator are be reviewed by a court *de novo*. *See, e.g.*, *GCIU-Employer Ret. Fund v. Quad/Graphics, Inc.*, 909 F.3d 1214, 1217 (9th Cir. 2018); *Penn Cent. Corp. v. W. Conference of Teamsters Pension Tr.*

*Fund*, 75 F.3d 529, 533 (9th Cir. 1996). The Court finds, therefore, that the underlying dispute is not the type of dispute for which an exception to the arbitration mandate of § 1401(a) is appropriate.

### D.  Nu-Way's Request for Attorney's Fees

Nu-Way moves for attorney's fees under 29 U.S.C. § 1451(e), which gives the Court discretion to award fees. The Ninth Circuit has stated the factors for a court to consider, including:

> (1) the culpability or good faith of the opposing party; (2) the ability of [the] opposing party to pay the award [of] fees; (3) the degree of deterrence which would result from an award of fees; (4) whether a number of participants under an ERISA plan would benefit from an award of fees; and (5) the relative merits of the parties' positions.

*Cuyamaca Meats, Inc. v. San Diego & Imperial Ctys. Butchers' & Food Emp'rs' Pension Tr. Fund*, 827 F.2d 491, 500 (9th Cir. 1987) (quoting *West v. Greyhound Corp.*, 813 F.2d 951, 956 (9th Cir. 1987)). The parties provided no definitive authority on the issue of whether accelerated withdrawal demands under § 1399(c)(5) fall within the arbitration mandate of § 1401(a). The Court found only a few district court opinions that directly addressed this issue and only one of these had any meaningful analysis. Given the complexities of this issue, the lack of legal precedent, and considering the factors enumerated by the Ninth Circuit, the Court declines to award attorney's fees.

## CONCLUSION

Nu-Way's Motion to Compel Arbitration and to Dismiss (ECF 16), joined by Morel (ECF 19), is GRANTED IN PART. The Court compels arbitration between Plaintiff and Nu-Way of the underlying disputes relating to Plaintiff's First Amendment to the Pension Agreement and Plaintiff's decision of default and accelerated withdrawal liability. The Court

STAYS Plaintiff's claims against Nu-Way, other than Plaintiff's claim for payment while the underlying disputes are arbitrated, *i.e.*, the "pay now, dispute later" issue. The Courtroom Deputy will contact the parties to schedule a telephonic status conference to discuss further proceedings regarding the "pay now, dispute later" issue and whether the compelled arbitration also should include Plaintiff's claim against Morel.

**IT IS SO ORDERED**.

DATED this 8th day of July, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge